Filed 6/6/22  P. v. Amante CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PETER JAMES AMANTE,<br><br>    Defendant and Appellant. | A161567<br><br>(Sonoma County Super. Ct. No. SCR 32760-1) |

Defendant Peter James Amante appeals from the trial court's denial of his Penal Code[1] section 1170.95 petition to vacate his conviction for first degree murder and for resentencing.  Because the jury's special gang circumstance finding under section 190.2, subdivision (a)(22) establishes as a matter of law that Amante is ineligible for relief under section 1170.95, we conclude the trial court correctly denied the petition without issuing an order to show cause.  We therefore affirm.

## I. BACKGROUND

In 2005, following a jury trial, Amante and three other defendants were convicted of first degree murder.  The jury found true a special circumstance allegation that Amante and his codefendants intentionally killed the victim

---

[1] All statutory references are to the Penal Code unless otherwise noted.

1

while they were active participants in a criminal street gang and that the murder was carried out to further the activities of the criminal street gang (§ 190.2, subd. (a)(22)). At trial, the prosecution advanced three theories of liability for murder: (1) that each defendant was the actual perpetrator; (2) that each defendant was a direct aider and abettor; and (3) that each defendant was an indirect aider and abettor of one of five "target crimes" under the natural and probable consequences doctrine.[2]

The trial court sentenced Amante to life imprisonment without the possibility of parole. On direct appeal, this court affirmed Amante's conviction in a 2009 unpublished opinion, finding that there was sufficient evidence to support each defendant's conviction under all three theories of murder advanced by the prosecution. (*People v. Amante* (Sept. 3, 2009, A113655)).[3]

On March 18, 2019, Amante filed a petition under section 1170.95 to vacate his murder conviction and for resentencing. The Sonoma County District Attorney opposed the petition on the grounds that the jury's gang special circumstance finding rendered Amante ineligible for relief under section 1170.95 as a matter of law. On December 2, 2020, the trial court issued a written order denying the petition.[4] In its order, the court stated

---

[2] The five "target crimes" were for (1) breach of peace; (2) assault; (3) battery; (4) assault with a deadly weapon; and (5) assault by means of force likely to produce great bodily injury.

[3] We take judicial notice of the record in Amante's 2009 appeal, *People v. Amante, supra*, A113655, as it is considered part of the record of conviction. (Evid. Code, §§ 452, subd. (d), 459, subd. (a); see *People v. Lewis* (2021) 11 Cal.5th 952, 972.)

[4] In this same order, the trial court also denied the petitions for relief under section 1170.95 of two of the three other defendants found guilty of first degree murder following the 2005 trial.

that the "special circumstance finding *alone* renders [Amante] ineligible for [section 1170.95] relief as a matter of law." In finding the special circumstance to be true, "the jury necessarily determined that each of these petitioners 'intentionally killed' the victim and that each of these petitioners acted with the requisite 'malice' required for an aiding and abetting theory of murder." The trial court further found that petitioners were ineligible for relief because this court's opinion on direct appeal "demonstrates as a matter of law that each of the petitioners *could be found guilty* under a valid theory of murder."

## II. DISCUSSION

### A. *Senate Bill 1437*

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) to " 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' ([Stats. 2018, ch. 1015, § 1,] subd. (f).)" (*People v. Gentile* (2020) 10 Cal.5th 830, 846–847 (*Gentile*).)

To achieve this purpose, Senate Bill 1437 added three provisions to the Penal Code: "First, to amend the felony-murder rule, Senate Bill 1437 added section 189, subdivision (e): 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted

3

with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' . . .

"Second, to amend the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3) . . . : 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.'

"Third, Senate Bill 1437 added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above." (*Gentile*, *supra*, 10 Cal.5th at pp. 842–843.)

B. *Section 1170.95 Petition*

"A person convicted of felony murder or murder under a natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" may file a petition seeking to vacate the conviction "and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be

4

convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

Once the threshold requirements are satisfied under section 1170.95, subdivisions (a) and (b), the prosecutor files a response and the petitioner may submit a reply. Then, the trial court "shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1170.95, subd. (c).)

If the trial court issues an order to show cause, it must hold an evidentiary hearing to determine whether the petitioner is entitled to relief. (§ 1170.95, subd. (d).) At the hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (d)(3).)

## C. *Prima Facie Showing*

Since we are asked to determine whether Amante is precluded from relief under section 1170.95 as a matter of law, our review is de novo. (See *People v. Murillo* (2020) 54 Cal.App.5th 160, 167.)

As explained in *People v. Duchine* (2021) 60 Cal.App.5th 798, 815, under section 1170.95, subdivision (c), "the prima facie showing the defendant must make is that he did not, in fact, act or harbor the mental state required, for a murder conviction under current law." Indeed, "[i]f a defendant asserts he lacked the requisite intent or did not act in a manner that would make him liable under still-valid murder theories, unless the

record of conviction refutes those assertions *as a matter of law*, the defendant has met his prima facie burden." (*Duchine*, at p. 813.)

The court may look at the record of conviction to determine whether a prima facie showing has been made, as the record "will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process. (See Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Lewis, supra*, 11 Cal.5th at p. 971.)

Finally, as this court held, "section 1170.95 does not allow relitigation of factual questions that were settled by a prior jury . . . ." (*People v. Secrease* (2021) 63 Cal.App.5th 231, 247 (*Secrease*).) Therefore, the trial court can make an adverse finding at the prima facie stage if the petitioner "makes allegations contrary to 'readily ascertainable facts' shown by the record of conviction." (*Id.* at p. 246.)

### D. *Amante Did Not Make a Prima Facie Showing That He Is Entitled to Relief Under Section 1170.95*

#### 1. Amante Is Ineligible for Relief as a Matter of Law Based on the Jury's Special Circumstance Finding

Amante argues that the trial court erred in denying his petition without holding an evidentiary hearing to determine whether he harbored the requisite intent under current law. We disagree.

As discussed above, Senate Bill 1437 (Stats. 2018, ch. 1015, § 2) amended section 188 by adding the following provision: "Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice

6

aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)  This amendment eliminated aiding and abetting liability for murder under the natural and probable consequences theory, but "does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*Gentile*, *supra*, 10 Cal.5th at p. 848.)

Amante argues the trial court should have granted an evidentiary hearing at which he could present new evidence and the prosecution would bear the burden of establishing "beyond a reasonable doubt each element required for a murder conviction under the revised law concerning malice." Although such a hearing is provided for under section 1170.95, subdivision (d)(3), Amante's argument presupposes that he has met *his* initial burden of establishing a prima facie case for relief.  But he failed to meet that burden here, as the record of conviction irrefutably establishes he is not entitled to relief as a matter of law.

At trial, the jury was instructed that, to return a true finding under section 190.2, subdivision (a)(22), the prosecution had to prove the following special circumstance beyond a reasonable doubt:  "If you find a defendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance is true or not true:  Penal Code Section 190.2(a)(22):  Intentional Killing by Active Street Gang Members."  This finding states that defendant "intentionally killed the victim while the defendant was an active participant in a criminal street gang, as defined in subdivision (f) of Section 186.22, and the murder was carried out to further the activities of the criminal street gang." (§ 190.2, subd. (a)(22).)

The jury was further instructed that if it did not find that Amante was the actual killer, or if it was unable to decide whether he was the actual killer

7

or an aider and abettor, it "cannot find the special circumstance to be true as to that defendant unless [it is] satisfied beyond a reasonable doubt that [Amante] with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree."

In its verdict, the jury found true the special circumstance as to each defendant. This finding necessarily means that the jury found Amante to have been either the actual perpetrator or a direct aider and abettor to the killing, both of which require malice aforethought and remain valid theories of murder under the current law. (§ 188, subd. (a)(3); *Gentile*, *supra*, 10 Cal.5th at p. 848.) Amante is therefore ineligible for relief under section 1170.95 as a matter of law.

## 2. Amante's Argument That the Trial Court Erred in Finding That He Could Be Convicted Under a Valid Theory of Murder

Amante contends the trial court's reliance on a finding that he could be found guilty under a valid theory of murder is erroneous. The trial court did indeed cite to and rely upon our opinion in the direct appeal concluding that there was sufficient evidence to support Amante's conviction under all three theories of murder advanced by the prosecution. (*People v. Amante*, *supra*, A113655.) Highlighting his claim of error here, Amante emphasized at oral argument that both the trial court and the Court of Appeal, in affirming the verdict rendered against him, acknowledged the "possibility" that his jury may have relied on a natural and probable consequences aiding and abetting theory.

We agree that whether a defendant *could* be found guilty under a valid theory of murder is not the proper issue to be addressed at the prima facie stage of a section 1170.95 proceeding. As this court has held, "the ultimate question is not a backward-looking inquiry into whether a past conviction

8

finds support in substantial evidence." (*Secrease, supra*, 63 Cal.App.5th at p. 246.) Rather, it is whether there is a prima facie case "that [the defendant] did not, in fact, act or harbor the mental state required, for a murder conviction under current law." (*People v. Duchine, supra*, 60 Cal.App.5th at p. 815.)

But the trial court stated in its order as the first reason for denying Amante's petition that the gang special circumstance finding *alone* rendered him ineligible for relief under section 1170.95 as a matter of law. The court held that "[i]n finding the special circumstance true, the jury necessarily determined that each of these petitioners [referring to the three defendants who were convicted of this murder] 'intentionally killed' the victim and that each of these petitioners acted with the requisite 'malice' required for an aiding and abetting theory of murder." We agree, and thus we conclude it made no difference that the court also adopted a sufficiency of the evidence analysis.

In a related argument, Amante contends that because the prosecution advanced multiple theories of murder at trial, including indirect aiding and abetting under the natural and probable consequences doctrine, and in light of some apparent jury confusion over an instruction that was resolved during deliberations, "the record does not establish Amante's intent beyond a reasonable doubt." We emphasize once again that, at this stage, it is Amante who bears the burden to make a prima facie showing that he is entitled to relief. (§ 1170.95, subd. (c).) Only after an order to show cause issues does the burden shift to the prosecution to prove that Amante is guilty of murder beyond a reasonable doubt under the current law as amended by Senate Bill 1437. (§ 1170.95, subd. (d)(3).)

9

We appreciate the background context that frames this issue. The prosecution was permitted to advance different theories of murder at trial, and during closing argument, the prosecutor argued the following to the jury: "You do not have to decide whether any particular defendant was an actual stabber. You should decide whether these defendants aided and abetted in the murder itself. And you should decide whether these defendants aided and abetted in the target offense and the murder being the natural and probable consequence thereof." But nothing about this strategic approach to the case was improper.

Although the jury's verdict did not specify which theory of murder it adopted in finding Amante guilty, the jury's gang special circumstance finding is dispositive. Because the jury found true that Amante either intentionally killed or aided and abetted with the intent to kill while he was an active participant in a criminal street gang, the jury necessarily adopted either the actual perpetrator or direct aider and abettor theory of liability. In short, we know—because the special circumstance finding tells us—that the jury did not base its verdict on a natural and probable consequences theory of aiding and abetting. That leaves only two possibilities: He either intended to kill or aided and abetted with the intent to kill. This conclusively refutes Amante's assertion that he did not act with the level of malice the current law requires.

Insisting to the contrary, Amante relies on *People v. Gonzalez* (2021) 65 Cal.App.5th 420, review granted August 18, 2021, S269792, and *People v. Brown* (2016) 247 Cal.App.4th 211 (*Brown*). These cases are distinguishable. *Gonzalez*, like this case, is an appeal from a section 1170.95 summary denial in a murder case where there was a special circumstance finding, but the special circumstance finding there was made under section 190.2,

10

subdivision (a)(17)(A), the robbery-felony-murder special-circumstance statute. The issue in *Gonzalez* was whether pre-*Banks* and *Clark*[5] predicate determinations for reckless indifference to human life and major participation in the target felony under section 190.2, subdivision (d), were binding. (See *Secrease, supra*, 63 Cal.App.5th at pp. 247–264.) That issue is not implicated here because the special circumstance verdict in this case was rendered under section 190.2, subdivision (a)(22)—the gang special circumstance statute—which, unlike section 190.2, subdivision (d), expressly calls for an intent-to-kill finding. At oral argument, Amante argued that the holding in *Gonzalez* applies generally to all section 190.2 special circumstance verdicts, regardless of the requisite findings that must be made in support of a true determination for the particular special circumstance involved. We do not agree.

As for *Brown,* the issue there was whether error under *People v. Chiu* (2014) 59 Cal.4th 155, in the giving of a natural and probable consequences instruction, was prejudicial. The appellate court found it was prejudicial on the record presented. (*Brown, supra*, 247 Cal.App.4th at pp. 226–227.) Granted, this case and *Brown* are broadly similar, at least at a general level, because in *Brown,* as here, there was a special circumstance verdict rendered under section 190.2, subdivision (a)(22). But the similarity ends there. We see a number of material points of distinction, starting with the fact that *Brown* predates Senate Bill 1437 and involves a harmless error issue that is fundamentally different than the section 1170.95, subdivision (c) prima facie case issue we are dealing with here. As is always the case with harmless error, the analysis employed in *Brown* required the sort of "backward-looking

---

[5] *People v. Banks* (2015) 61 Cal.4th 788; *People v. Clark* (2016) 63 Cal.4th 522.

inquiry" we rejected in *Secrease*. (*Secrease*, *supra*, 63 Cal.App.5th at p. 246.) Another striking distinction is that *Brown* involved a uniquely bizarre set of circumstances in the taking of the verdict.[6] In addition, as the trial court in this case pointed out, *Brown* "was a 'close case' where the evidence against defendant was 'not overwhelming' " on a record where "the fact that the jury's other (somewhat conflicting) firearm enhancement findings indicated it had rejected an 'actual perpetrator' theory" and "the jury [had] asked a question about the natural and probable consequences theory shortly before rendering its verdict . . . ." Together with the irregularities in the taking of the verdict, all of this explained why the *Chiu* error in *Brown* was not harmless beyond a reasonable doubt.

---

[6] As described by the appellate panel in *Brown*, the circumstances were as follows: "Late in the afternoon on January 2, 2014, the jury informed the court it reached a verdict, but that it preferred the court take the verdict the next day at 1:30 p.m. The bailiff obtained the verdict forms from the jury and gave them to the court to review 'for completeness.' The jurors were excused and ordered to return at 1:30 p.m. the next day. In reviewing the forms, the court observed the not guilty form for first degree murder had been signed and dated, but the signature and date had been crossed out and the words 'withdrawl [*sic*]' and 'void' had been written in large letters diagonally across the form. Without consulting with counsel, or even making counsel aware of the situation, the court sent the jury a note when it reconvened on January 3, 2014, at 1:30 p.m. The note stated, 'The "Not Guilty" form for Murder in the First Degree had "withdrawn void" handwritten across the form. The Court has taken out that form and replaced it with a clean copy.' The note continued, apparently because the foreperson did not sign either of the verdict forms for count two, 'As to Count 2, under tab # 2, please date and sign the appropriate form for the verdict you have reached or indicate to the court by a question that you are unable to reach a verdict on Count 2 and are therefore deadlocked.' " (*Brown*, *supra*, 247 Cal.App.4th at pp. 227–228.)

None of this was revealed to counsel until after the jury was excused. (*Brown*, *supra*, 247 Cal.App.4th at p. 228.)

There are no comparable circumstances suggesting that the jury here relied on a natural and probable consequences aiding and abetting theory. We disagree with Amante that the jury's question to the trial court concerning the interplay of the first degree murder instruction, and the natural and probable consequences instruction (when considered along with the court's answer to that question), suggest to the contrary. In fact, in acknowledging how unusual the circumstances were in the *Brown* case, the appellate panel in *Brown* pointed out that, on a different record, it might have decided the *Chiu* error there was harmless. And in making this point, the record the *Brown* court described is a good description of the record we have here: "It is possible in a given case," the *Brown* court explained, "to conclude the giving of an erroneous natural and probable consequences instruction was harmless beyond a reasonable doubt when the jury finds the defendant guilty of first degree murder *and* finds the gang special circumstance true, because the special circumstance required finding the defendant intentionally killed. In such a situation, it might be concluded the jury necessarily rejected the natural and probable consequences theory of aider and abettor liability and instead found the defendant was either the actual killer or aided and abetted the actual killer while sharing the killer's intent to kill." (*Brown*, *supra*, 247 Cal.App.4th at p. 226, italics in original.)

### 3. The New Arguments Raised in Amante's Reply Brief

Amante raises two new arguments in his reply brief. First, in conclusory fashion he argues that the evidence presented at trial to support the gang special circumstance finding was based on hearsay testimony from an expert that is now insufficient as evidence under the current law. Whether competent proof supports the jury finding that Amante and his codefendants killed the victim while they were active participants in an enterprise qualifying as a criminal street gang and whether they sought to

further the activities of such a gang in killing the victim (see *People v. Sanchez* (2016) 63 Cal.4th 665) strikes us as irrelevant to whether the defendants intended to kill, which is the dispositive issue here. Suffice it to say the expert's testimony was not the sole evidence before the jury bearing on the issue of intent to kill. In any event, Amante's failure to raise this argument in his opening brief, alone, counsels against addressing it on the merits. (See *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1296 ["we will not address arguments raised for the first time in the reply brief"].) Sufficiency of the evidence attacks on gang special circumstance findings can be quite complex. (See, e.g., *People v. Thompkins* (2020) 50 Cal.App.5th 365, 398–412.) Such arguments must be raised properly and "support[ed] . . . by argument" in accordance with rule 8.204 (a)(1)(B) of the California Rules of Court. (Cf. *Thompkins*, at p. 405, fn. 21 [detailed *Sanchez* arguments attacking gang special circumstance findings were raised by supplemental brief and the Attorney General was given an opportunity to respond].) We decline to guess what the precise bases of Amante's argument here might be or to anticipate how the Attorney General might respond.

Second, Amante argues that based on an amendment to section 186.22 that became effective on January 1, 2022, the predicate offenses needed to establish a "pattern of criminal gang activity" now include a requirement that "the common benefit of the offense is more than reputational." (§ 186.22, subd. (e)(1).)[7] He contends that the evidence presented at trial by the prosecution's expert regarding the gang's predicate offenses is insufficient to

---

[7] We note that Amante could not have raised this second argument in his opening brief since the amendment became effective after Amante's opening brief was filed.

establish "a pattern of criminal gang activity" under the current law.  We are not persuaded.  Because the amendment does not affect the pertinent element of intent to kill under the gang special circumstance finding (§ 190.2, subd. (a)(22)), this line of argument is not germane to whether Amante has made a prima facie case under section 1170.95.  Any change as to the predicate offenses that are now required to establish a "pattern of criminal gang activity" has no bearing on the jury's finding that Amante intentionally killed or directly aided and abetted in the killing.

### III. DISPOSITION

The trial court's order denying Amante's section 1170.95 petition is affirmed.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
BROWN, J.